UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| E. I. DU PONT DE NEMOURS AND COMPANY, A DELAWARE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. NO. _____ |
| FRANK CIANFLONE D/B/A MAXIGLIDE PRODUCTS, INC., AN INDIVIDUAL, AND SAVAGE SYSTEMS, LLC, A CONNECTICUT LIABILITY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff, E. I. du Pont de Nemours and Company ("DuPont"), by and through its undersigned counsel, files this Complaint against Defendants Frank Cianflone d/b/a Maxiglide Products, Inc. ("Maxiglide") and Savage Systems, LLC ("Savage"), and alleges as follows:

## NATURE OF ACTION

1.      This is an action against Maxiglide for trademark infringement, trademark counterfeiting, unfair competition, trademark dilution, and other related causes of action under federal, state and common law arising from the unauthorized use by Maxiglide of DuPont's famous TEFLON® mark.  This is an action against Savage for contributory trademark infringement, contributory trademark counterfeiting, contributory unfair competition, contributory trademark dilution, and other related causes of action under federal, state and common law arising from continuing to supply its domain server service to a direct infringer of DuPont's famous TEFLON® mark.

**THE PARTIES**

2.      DuPont is a Delaware corporation with a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

3.      DuPont is a science company engaged in the development, manufacture, sale and distribution of a wide variety of products and ingredients in the United States and throughout the world.

4.      Upon information and belief, Defendant Maxiglide, an individual, is a citizen of Massachusetts with an address of 372 Hudson Road, Stow, Massachusetts 01775.

5.      Upon information and belief, Maxiglide is engaged in the promotion and sale of various products in the United States, including in this District, at its business location and through its website at www.maxiglide.com and product pages at www.amazon.com.

6.      Upon information and belief, Defendant Savage is a Connecticut limited liability company with a principal place of business at 82 Providence Street, Putnam, CT 06260.

7.      Upon information and belief, Savage is engaged in the promotion and sale of computer services in the United States, including in this District, at its business location and through its website at www.savageweb.net.

**JURISDICTION AND VENUE**

8.      Jurisdiction of this Court is based on 28 U.S.C. §1331 (Federal Question), 28 U.S.C. §1332(a)(1) (Diversity Jurisdiction), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and related actions), Sections 39 and 43(a) and (c) of the United States Trademark Act of 1946 ("Lanham Act"), as amended (15 U.S.C. §§1121 and 1125(a) and (c)), and 28 U.S.C. §1367 (Supplemental Jurisdiction), as well as the principles of pendent jurisdiction.  The amount in question exceeds $75,000, exclusive of interest and costs.

9.     This action arises out of wrongful acts including: advertising, offering for sale, selling and distributing products by Defendants within this judicial district.  This Court has personal jurisdiction over Defendant Maxiglide because it is a citizen of Massachusetts. Furthermore, this Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the opportunity to conduct commercial activities in this forum, this Complaint arises out of those activities, and the exercise of jurisdiction over these Defendants is reasonable.  Also, Defendants maintain continuous and systematic contacts with the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.   Likewise, personal jurisdiction is proper under the Massachusetts Long-Arm Statute, G.L. c. 223A, § 3, and the exercise of jurisdiction is not inconsistent with the Constitutions of this Commonwealth or of the United States.  Venue is proper in this district under 28 U.S.C. §1391(b) and (c), as Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to these claims occurred in this District.

**DUPONT'S USE AND OWNERSHIP OF THE TEFLON® MARK**

10.     In the late 1930's, DuPont discovered a method to polymerize tetrafluoroethylene to form a fluoropolymer compound known as polytetrafluoroethylene ("PTFE").  PTFE is both slippery and chemically inert making it ideal for use in a wide variety of different products.

11.     In approximately 1944, DuPont adopted and began to use the fanciful name and mark TEFLON® ("TEFLON® Mark") for its PTFE products and began to sell TEFLON® brand PTFE directly to manufacturers and others for use in a wide variety of products.

12.     DuPont TEFLON® fluoropolymer products have been a tremendous commercial success.  Since 1944, DuPont has generated millions of dollars in revenue from the sale of TEFLON® products and the licensing of the TEFLON® Mark.

13.     DuPont and its related companies have spent millions of dollars in the advertising and promotion of the TEFLON® Mark and the products sold under the TEFLON® Mark.

14.     As a result of the quality of the DuPont TEFLON® fluoropolymer products and the extensive sales, licensing and marketing, advertising and promotion of these products under the TEFLON® Mark by DuPont and its related companies, the TEFLON® Mark has become a famous trademark that is widely and favorably known by consumers in the United States and elsewhere as designating high quality and dependable products originating exclusively from DuPont and its related companies.

15.     The TEFLON® Mark has been famous in the United States and elsewhere since long prior to the acts complained of herein.

16.     DuPont is the exclusive owner of a number of United States Trademark Registrations for the TEFLON® Mark for a variety of products and ingredients dating back to 1946.  These include:  a) Reg. No. 0,418,698 for the mark TEFLON® for "synthetic resinous fluorine-containing polymers in the form of molding and extruding compositions, fabricated shapes - namely, sheets, tubes, tape and filaments, and emulsions"; b) Reg. No. 0,559,331 for TEFLON® for "polytetrafluoroethylene coatings in the nature of paints and varnishes"; c) Reg. No. 0,623,605 for TEFLON® for "fibers and filaments in the nature of threads and yarns adapted to be used in making fabrics"; d) Reg. No. 0,676,166 for TEFLON® for "films or sheets made from polymers of fluorinated hydrocarbons for use in packaging applications, in electrical and non-electrical insulation, as protective liners for containers and equipment, in tapes, in

machinery parts, in covering, coating, and packing substances, in hose and piping, and for general use in the industrial arts"; e) Reg. No. 0,827,105 for TEFLON® for "coatings in the nature of paint, based on fluorine-containing resins"; f) Reg. No. 1,111,147 for TEFLON® for "chemical compound in the nature of a textile finish with oil, water, and stain repellant characteristics"; g) Reg. No. 1,592,650 for TEFLON® for "fluorine-containing polymers in resin and dispersion form for use as additives in inks, plastics, lubricants, coating, and other host materials where attributes such as lubricity, friction reduction, nonstick, and temperature and chemical resistance are desired"; h) Reg. No. 2,601,355 for TEFLON® for "windshield wiper blades"; i) Reg. No. 3,590,266 for TEFLON® for "industrial lubricants, greases and oils;" and j) Reg. No. 3,206,677 for TEFLON® for "cleaning preparations, shampoos, wax and polish for automobiles".

17.     All of the above-identified registrations remain in full force and effect and are prima facie proof of DuPont's exclusive rights to own and use the TEFLON® Mark.  In addition, all of the above registrations are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065).

**<u>MISUSE BY DEFENDANT MAXIGLIDE OF THE TEFLON® MARK</u>**

18.     Upon information and belief, Defendant Maxiglide manufactures and sell a variety of products, including wax and polish for skis and boats.

19.     Upon information and belief, Defendant Maxiglide offers for sale and sells some products in connection with the TEFLON® Mark that do not contain genuine DuPont TEFLON® fluoropolymer or otherwise are not authorized to be sold under the TEFLON® Mark ("Maxiglide Unauthorized Products").

20.     Upon information and belief, notwithstanding the lack of authorization from DuPont and the fact that said Maxiglide Unauthorized Products do not contain genuine DuPont fluoropolymer or otherwise are not authorized to be sold under the TEFLON® Mark, Maxiglide has made repeated unauthorized use of the TEFLON® Mark in connection with said products, as described below, with the intent to mislead and confuse consumers into believing that said Maxiglide Unauthorized Products contain genuine DuPont fluoropolymer or that said Maxiglide Unauthorized Products are otherwise authorized or licensed by DuPont and with the intent of misappropriating, for its own benefit, the tremendous goodwill built up by DuPont in the TEFLON® Mark.

21.     In particular, Defendant Maxiglide has improperly used the TEFLON® Mark in advertising and promotional materials for said Maxiglide Unauthorized Products as well as on the Internet websites at www.maxiglide.com and it product pages at www.amazon.com; and otherwise has falsely stated or implied that said Maxiglide Unauthorized Products contain genuine DuPont fluoropolymer or that its use of the TEFLON® Mark is authorized or licensed by DuPont.

22.     Upon information and belief, Defendant Maxiglide has also used the TEFLON® Mark and variations thereon as "title," "keyword" or "content" metatags in connection with its website at www.maxiglide.com and product pages on www.amazon.com in an attempt to mislead the public and to attract and misdirect potential consumers using Internet search engines searching the Internet for genuine or authorized TEFLON® products to Maxiglide's website and Amazon.com site.

23.     Upon information and belief, the aforementioned misuse of the TEFLON® Mark by Maxiglide was done with the intent of deceiving or misleading customers into mistakenly

believing that said Maxiglide Unauthorized Products contained genuine or authorized

TEFLON® products originating from DuPont or its related companies and otherwise

misappropriating the goodwill built up by DuPont in the TEFLON® Mark and otherwise

attracting and misdirecting consumers looking for genuine or authorized TEFLON® brand goods

to Defendant Maxiglide's website and Amazon website.

24.     Prior to commencing this lawsuit, DuPont and its representatives have repeatedly

attempted to communicate directly with Maxiglide and its representatives in an attempt to

resolve this matter without the necessity of bringing this lawsuit, but Defendant Maxiglide has

refused to respond and cease all unauthorized use of the TEFLON® Mark as requested by

DuPont and continues to deliberately and intentionally use the mark without the consent of

DuPont.

25.     The misuse of the TEFLON® Mark by Maxiglide was intended to cause, has

caused and is likely to continue to cause consumer confusion, mistake or deception including the

misleading of consumers into mistakenly believing that the Maxiglide Unauthorized Products

contain genuine DuPont TEFLON® product or DuPont has authorized or licensed the use by

Defendant of the TEFLON® trademark for those products.

26.     The aforementioned misuse of the TEFLON® Mark by Maxiglide is damaging to

the reputation and goodwill of the DuPont TEFLON® Mark.

27.     Upon information and belief, the aforesaid acts of Defendant Maxiglide has

caused and, unless enjoined, will continue to cause irreparable damage to DuPont and to the

reputation of its valuable TEFLON® brand.

28.     DuPont has no adequate remedy at law.

## SECONDARY LIABILITY OF DEFENDANT SAVAGE

29.     Upon information and belief, Defendant Savage provides domain server services to Maxiglide for hosting the website www.maxiglide.com.

30.     Maxiglide sells a variety of products through its website at www.maxiglide.com, including boat polishes and ski waxes.

31.     Upon information and belief, Maxiglide offers for sale and sells, on its website at www.maxiglide.com, some products in connection with the TEFLON® Mark that do not contain genuine DuPont TEFLON® fluoropolymer or otherwise are not authorized to be sold under the TEFLON® Mark.

32.     Upon information and belief, notwithstanding the lack of authorization from DuPont and the fact that said Maxiglide Unauthorized Products do not contain genuine DuPont fluoropolymer or otherwise are not authorized to be sold under the TEFLON® Mark, Maxiglide, on its website at www.maxiglide.com, has made repeated unauthorized use of the TEFLON® Mark in connection with said products, as described below, with the intent to mislead and confuse consumers into believing that said Maxiglide Unauthorized Products contain genuine DuPont fluoropolymer or that said Maxiglide Unauthorized Products are otherwise authorized or licensed by DuPont and with the intent of misappropriating, for their own benefit, the tremendous goodwill built up by DuPont in the TEFLON® Mark.

33.     In particular, Maxiglide has improperly used the TEFLON® Mark in advertising and promotional materials for said Maxiglide Unauthorized Products on the Internet website at www.maxiglide.com; and otherwise has falsely stated or implied that said Maxiglide Unauthorized Products contain genuine DuPont fluoropolymer or that its use of the TEFLON® Mark is authorized or licensed by DuPont.

34.     Upon information and belief, Maxiglide has also used the TEFLON® Mark and variations thereon as "title," "keyword" or "content" metatags in connection with its website at www.maxiglide.com in an attempt to mislead the public and to attract and misdirect potential consumers using Internet search engines searching the Internet for genuine or authorized TEFLON® products to Maxiglide's website.

35.     Upon information and belief, the aforementioned misuse of the TEFLON® Mark by Maxiglide, on its website at www.maxiglide.com, was done with the intent of deceiving or misleading customers into mistakenly believing that said Maxiglide Products contained genuine or authorized TEFLON® products originating from DuPont or its related companies and otherwise misappropriating the goodwill built up by DuPont in the TEFLON® Mark and otherwise attracting and misdirecting consumers looking for genuine or authorized TEFLON® brand goods to Defendant Maxiglide's website.

36.     Prior to commencing this lawsuit, DuPont and its representatives attempted to communicate directly with Maxiglide and its representatives in an attempt to resolve this matter, but Maxiglide has refused to respond an cease all unauthorized use of the TEFLON® Mark as requested by DuPont and continues to deliberately and intentionally use the mark without the consent of DuPont.

37.     The misuse of the TEFLON® Mark by Maxiglide was intended to cause, has caused and is likely to continue to cause consumer confusion, mistake or deception including the misleading of consumers into mistakenly believing that the Maxiglide Unauthorized Products contain genuine DuPont TEFLON® product or DuPont has authorized or licensed the use by Maxiglide of the TEFLON® trademark for those products.

38.     The aforementioned misuse of the TEFLON® Mark by Maxiglide is damaging to the reputation and goodwill of the DuPont TEFLON® Mark.

39.     Upon information and belief, the aforesaid acts of Maxiglide has caused and, unless enjoined, will continue to cause irreparable damage to DuPont and to the reputation of its valuable TEFLON® brand.

40.     On June 20, 2013 and July 31, 2013, DuPont and its representatives contacted Savage and provided actual notice that Maxiglide was infringing DuPont's TEFLON® Mark through its product sales on www.maxiglide.com.

41.     DuPont requested that Savage discontinue providing domain server services to Maxiglide until Maxiglide's unauthorized use of DuPont's TEFLON® Mark has been resolved.

42.     Upon information and belief, the domain server services provided to Maxiglide by Savage are necessary for the continued infringement of DuPont's TEFLON® Mark on www.maxiglide.com.

43.     Upon information and belief, Savage physically hosted/hosts the www.maxiglide.com website on Savage's server and routed/route Internet traffic to and from the website.

44.     By being the domain server, Savage exercises direct control and monitoring over www.maxiglide.com, Maxiglide's primary means of infringement of DuPont's TEFLON® Mark.

45.     Prior to commencing this lawsuit, DuPont and its representatives attempted to communicate directly with Savage and its representatives in an attempt to resolve this matter without the necessity of bringing this suit, but Savage has refused to respond and cease providing its domain server services to Maxiglide as requested by DuPont and has allowed the continued, intentional and deliberate infringement of the TEFLON® Mark.

46.     Despite having actual knowledge that Maxiglide was/is using Savage's domain server services to assist Maxiglide in advertising and distributing infringing products to Internet users, Savage failed to take down the infringing domain name even though it could take simple measures to do so.

47.     Upon information and belief, Savage profited from providing domain server services to Maxiglide, whereby Maxiglide was/is actively providing infringing products.

48.     Upon information and belief, Savage had/has the ability to remove the Maxiglide website, thereby stopping the infringing activity over the Internet.

49.     As of the date of this Complaint, Savage continues to provide domain server services to Maxiglide despite having actual knowledge of the infringing conduct.

50.     DuPont has no adequate remedy at law.

## COUNT I

### Trademark Infringement Under The United States Trademark Act (15 U.S.C. §1114 (1))

51.     DuPont repeats the allegations set forth in Paragraphs 1 through 28.

52.     Defendant Maxiglide uses of a reproduction, counterfeit, copy or colorable imitation of the famous TEFLON® Mark, without DuPont's consent, in commerce in connection with the sale, offering for sale, distribution, or advertising of their products or services is likely to cause confusion, or to cause mistake, or to deceive the public, and thus constitutes trademark infringement pursuant to 15 U.S.C. §1114.

53.     The complained of acts constitute willful, deliberate and intentional infringement by Maxiglide of Plaintiff's federally registered trademarks for the TEFLON® Mark in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(1)).

54.     Maxiglide's intentional and willful infringement of the TEFLON® Mark has caused, and will continue to cause, damage to DuPont and is causing irreparable harm to DuPont for which there is no adequate remedy at law.  Maxiglide is directly liable for these actions.

## COUNT II

### Trademark Counterfeiting Under The United States Trademark Act (15 U.S.C. §1114(1))

55.     DuPont repeats the allegations set forth in Paragraphs 1 through 28.

56.     Upon information and belief, Maxiglide intentionally used, without DuPont's consent, a counterfeit version of the TEFLON® Mark in commerce, knowing that the marks were counterfeit.  Maxiglide used the counterfeit marks in connection with the sale, offering for sale, or distribution of their goods and services, which is likely to cause confusion, or cause mistake, or deceive the public.

57.     The complained of acts constitute trademark counterfeiting by Maxiglide in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(1)).

## COUNT III

### False Designation Of Origin And Unfair Competition Under The United States Trademark Act (15 U.S.C. §1125(a))

58.     DuPont repeats the allegations set forth in paragraphs 1 through 28.

59.     Maxiglide's use of the TEFLON® Marks, without DuPont's consent, in commerce to promote, market, or sell their products or services in direct competition with DuPont's products and services, constitutes False Designation of Origin and Unfair Competition pursuant to 15 U.S.C. §1125(a).  Maxiglide's use of the TEFLON® Mark is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation,

connection, or association of Maxiglide with DuPont and/or as to the origin, sponsorship, or approval of Maxiglide's productions and commercial activities with DuPont.

60.    The complained of acts constitute willful, deliberate and intentional false designations of origin by Maxiglide as to products made available by Maxiglide and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

61.    Maxiglide's wrongful activities have caused and – unless enjoined by this Court – will continue to cause irreparable injury and other damages to DuPont's business and reputation, and will continue to cause damage to the goodwill DuPont has developed in its TEFLON® Mark.  DuPont has no adequate remedy at law.

## COUNT IV

**False Descriptions Of Fact And Representations And False Advertising Under
The United States Trademark Act (15 U.S.C. §1125(a))**

62.    DuPont repeats the allegations set forth in paragraphs 1 through 28.

63.    Maxiglide's use of the TEFLON® Marks, without DuPont's consent, in commercial advertising or promotion to promote, market, or sell their products or services in direct competition with DuPont's products and services, constitutes False Designation of Fact and Representation and False Advertising pursuant to 15 U.S.C. §1125(a). Maxiglide's use of the TEFLON® Mark in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of their goods, services or activities.

64.    The complained of acts constitute willful, deliberate and intentional false and misleading descriptions of fact, false and misleading representations of fact and false advertising by Maxiglide in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

65.    Maxiglide's wrongful activities have caused and – unless enjoined by this Court – will continue to cause irreparable injury and other damages to DuPont's business and reputation,

and will continue to cause damage to the goodwill DuPont has developed in its TEFLON®

Mark.  DuPont has no adequate remedy at law.

## COUNT V

**Trademark Dilution
Under The United States Trademark Act
(15 U.S.C. §1125(c))**

66.     DuPont repeats the allegations set forth in paragraphs 1 through 28.

67.     Maxiglide's unauthorized use of DuPont's famous TEFLON® Mark is likely to

dilute and blur the distinctive quality of these marks and to tarnish the TEFLON® Mark.

68.     The complained of acts by Maxiglide have diluted and damaged the distinctive

quality of DuPont's famous TEFLON® Mark and constitute trademark dilution of a famous

mark in violation of Section 43(c) of the Lanham Act (15 U.S.C. §1125(c)).

69.     Upon information and belief, Maxiglide willfully intended to trade on DuPont's

reputation and/or cause dilution and tarnishment of DuPont's famous TEFLON® Mark.

## COUNT VI

**Unfair Business Practices (Mass. Gen. Laws, ch. 93A, § 11)**

70.     DuPont repeats the allegations set forth in Paragraphs 1 through 28.

71.     Maxiglide is engaged in the conduct of trade or commerce.

72.     Plaintiff's mark TEFLON® is entitled to protection pursuant to the law of the

Commonwealth of Massachusetts in that it is inherently distinctive and/or has acquired a

secondary meaning.

73.     Maxiglide's described infringing uses of Plaintiff's mark were willful, intentional

acts which began after the mark had become distinctive.

74.     Maxiglide's infringing use of Plaintiff's mark is likely to cause confusion as to the source of origin of the Maxiglide Unauthorized Products, falsely suggesting Plaintiff's endorsement or sponsorship of the Maxiglide Unauthorized Products and will cause actual dilution of Plaintiff's distinctive mark by blurring.

75.     Maxiglide's infringing use of Plaintiff's mark is unfair, immoral, unethical and in violation of all established concepts of fairness.

76.     Maxiglide's infringing use of Plaintiff's mark occurred primarily and substantially within Massachusetts.

77.     As a direct and proximate result thereof, Plaintiff is entitled to injunctive relief enjoining and restraining Maxiglide's use of the mark.

78.     Plaintiff has no adequate remedy at law.

<u>COUNT VII</u>

**Contributory Trademark Infringement of Section 32
<u>Lanham Act (15 U.S.C. §1114, as amended)</u>**

79.     DuPont repeats the allegations set forth in Paragraphs 1 through 50.

80.     Defendant Savage's contributory conduct in connection with its clients/customers and others' respective unauthorized and unlawful acts of infringement of DuPont's federally registered mark, have enabled, assisted, aided and abetted such clients/customer and others, to use in commerce DuPont's TEFLON® mark, or a reproduction, counterfeit, copy, or colorable imitation thereof, in connection with the sale, offering for sale, distribution, or advertising of any goods or in connection with such use was or is likely to cause confusion or mistake, or to deceive, constitutes acts of contributory trademark infringement in violation of Section 32 of the Lanham Trademark Act of 1946, 15 U.S.C. §1114, as amended.

81.     Moreover, Savage's contributory conduct in connection with its clients/customers and others' respective unauthorized and unlawful acts of reproduction, counterfeit, copy, or colorable imitation of DuPont's federally registered TEFLON® mark, and application thereof to any ads, signs, prints, packages, wrappers in connection with the sale, offering for sale, distribution, or advertising of any goods or in connection with such use was or is likely to cause confusion or mistake, or to deceive, constitute further acts of contributory trademark infringement in violation of Section 32 of the Lanham Trademark Act of 1946, 15 U.S.C. §1114, as amended.

82.     Defendant Savage's contributory conduct as alleged hereinabove, are business practices likely to deceive, confuse or cause mistake by the purchasing public, and constitute acts of contributory trademark infringement, all in violation of Section 32 of the Lanham Trademark Act of 1946, 15 U.S.C. §1114, as amended.

83.     DuPont has no adequate remedy at law and has suffered, and is continuing to suffer, harm and damage as a result of Savage's acts in contributory violation of §32 of the Lanham Trademark Act of 1946, in amounts within the jurisdiction of this Court, thus far not determined but believed to be in excess of Twenty-Five Thousand Dollars ($25,000), which amounts should be trebled pursuant to 15 U.S.C. §1117.

## COUNT VIII

### Contributory Trademark Counterfeiting Under The United States Trademark Act (15 U.S.C. §1114(1))

84.     DuPont repeats the allegations set forth in Paragraphs 1 through 50.

85.     The complained of acts by Savage constitute contributory trademark counterfeiting in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(1)).

## COUNT IX

**Contributory False Designation Of Origin And Unfair Competition Under The United States Trademark Act (15 U.S.C. §1125(a))**

86.     DuPont repeats the allegations set forth in paragraphs 1 through 50.

87.     The complained of acts by Savage constitute willful, deliberate and intentional contributory false designations of origin as to products made available by Defendant and unfair competition in violation of Section 43(a) of the Lanham Act (15U.S.C. §1125(a)).

## COUNT X

**Contributory False Descriptions Of Fact And Representations And False Advertising Under The United States Trademark Act (15 U.S.C. §1125(a))**

88.     DuPont repeats the allegations set forth in paragraphs 1 through 50.

89.     The complained of acts by Savage constitute contributory willful, deliberate and intentional false and misleading descriptions of fact, false and misleading representations of fact and false advertising in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

## COUNT XI

**Contributory Trademark Dilution Under The United States Trademark Act (15 U.S.C. §1125(c))**

90.     DuPont repeats the allegations set forth in paragraphs 1 through 50.

91.     The complained of acts by Savage have diluted and damaged the distinctive quality of DuPont's famous TEFLON® Mark and constitute contributory trademark dilution of a famous mark in violation of Section 43(c) of the Lanham Act (15 U.S.C. §1125(c)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff E .I. du Pont de Nemours and Company prays for judgment as follows:

1. That judgment be entered in favor of Plaintiff on all causes of action set forth herein.

2. That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded monetary damages in the amount of $100,000 to recover the damages incurred by Plaintiff.

3. That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded its costs.

4. That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded all of Defendants' profits.

5. That the amounts in paragraphs 2, 3 and 4 of this prayer be trebled or otherwise multiplied to the extent permitted by statute.

6. Plaintiff reserves the right to elect statutory damages up to and including $2,000,000 per counterfeit mark pursuant to 15 U.S.C. §1117(c).

7. That Defendant Maxiglide, its principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privity or acting in concert or participation with Maxiglide, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

(a) claiming or representing that any products and/or services sold by Defendants contains genuine TEFLON® fluoropolymer products;

18

(b)     using, in any manner, or holding itself out as having rights to use, the TEFLON®

Mark or any other name, mark or design confusingly similar to the TEFLON® Mark to

designate, describe or refer to themselves or in conjunction with any product or service,

including any use in conjunction with any Internet activities conducted by it or on its behalf such

as any use as a domain name or in the text, graphics and hypertext metatags of any Internet

website;

(c)     requesting or inducing Internet search engines to display links to Maxiglide's

website or other websites displaying or promoting Maxiglide products or services when potential

consumers using those search engines search for terms containing variations of the TEFLON®

Mark;

(d)     selling, offering for sale, promoting, advertising, distributing or providing or

offering to provide any goods or services in conjunction with the TEFLON® Mark or any other

name, mark or design confusingly similar to the TEFLON® Mark in conjunction with any

product or service; and

(e)     engaging in any course of conduct likely to cause confusion, deception or mistake

or injure Plaintiff's business reputation or dilute the TEFLON® Mark or appropriate the good

will and reputation of said mark or lead to the passing off of Maxiglide's products and services as

TEFLON® products and services.

8.     That Defendant, Savage Systems, LLC, its members, officers, directors,

principals, agents, servants, affiliates, employees, attorneys, representatives, successors and

assigns, and all those in privity or acting in concert or participation with Savage, and each and all

of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

(a)      providing web hosting services to Maxiglide for use on a website containing products infringing the DuPont TEFLON® Mark, including, but not limited to, www.maxiglide.com;

(b)      providing domain server services to Maxiglide for use on a website containing products infringing the DuPont TEFLON® Mark, including, but not limited to, www.maxiglide.com;

(c)      requesting or inducing Internet search engines to display links to www.maxiglide.com or other websites displaying or promoting Maxiglide's products or services when potential consumers using those search engines search for terms containing variations of the TEFLON® Mark;

(d)      selling, offering for sale, promoting, advertising, distributing or providing or offering to provide any goods or services in conjunction with the TEFLON® Mark or any other name, mark or design confusingly similar to the TEFLON® Mark in conjunction with any product or service; and

(e)      engaging in any course of conduct likely to cause confusion, deception or mistake or injure Plaintiff's business reputation or dilute the TEFLON® Mark or appropriate the good will and reputation of said mark.

9.      That the Court issue an Order directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

10.      That Maxiglide be required to deliver to Plaintiff all merchandise, packaging, labels, boxes, cartons, advertising, brochures, plates, molds, documents, advertising and

promotional materials and other things, possessed, used or distributed by Maxiglide, or on its behalf, which refer to the TEFLON® Mark or any other name, mark or design confusingly similar to the TEFLON® Mark.

11.    That the Court require Maxiglide to notify its commercial associates, dealers, master distributors, suppliers and customers of this Order;

12.    That the Court require a full and complete accounting of all monies received by Defendants as a result of the infringement.

13.    For interest on all amounts found to be due to Plaintiff from Defendants, at the prevailing rate, from the date of said amounts or any part thereof became or becomes due.

14.    That Plaintiff be awarded such other monetary damages, recovery and awards as appropriate under the law.

15.    That the Court award to Plaintiff punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

16.    That Plaintiff be awarded the costs of this action and its disbursements, and reasonable attorney's and investigatory fees incurred and as otherwise appropriate herein pursuant to 15 U.S.C. §1117 or other appropriate statute or law;

17.    That Plaintiff be granted such other monetary, equitable and further relief, as this Court may deem appropriate under federal, state and common law; and

18.    That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violation thereof.

## DEMAND FOR JURY TRIAL

DuPont hereby demands a jury trial on all issues.

**PLAINTIFF - E. I. DU PONT DE NEMOURS AND COMPANY,**

By its attorneys,


/s/ Jennifer A. Corvo
Jennifer M. DelMonico
(will file *Pro Hac Vice* motion)
jdelmonico@murthalaw.com
Jennifer A. Corvo – BBO 667497
jcorvo@murthalaw.com
Murtha Cullina LLP
99 High Street
Boston, Massachusetts 02110-2320
Telephone: 617.457.4000
Facsimile: 617.482.3868

-and-

Andrea E. Bates
(will file *Pro Hac Vice* motion)
Abates@Bates-Bates.com
Bates & Bates, LLC
1890 Marietta Boulevard
Atlanta, Georgia 30318
Telephone: 404.228.7439
Facsimile:  404-963-6231

Dated: September 9, 2013